UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

MICHAEL BANKS                                CIVIL ACTION NO. 08-cv-0744

VERSUS                                       JUDGE STAGG

WARDEN, DAVID WADE                           MAGISTRATE JUDGE HORNSBY
CORRECTIONAL CENTER

**REPORT AND RECOMMENDATION**

**Introduction**

A Bossier Parish jury convicted Michael E. Banks ("Petitioner") of unauthorized use of a motor vehicle, and the judge imposed the maximum 10-year sentence. Petitioner's conviction and sentence were affirmed on direct appeal. State v. Banks, 940 So.2d 111 (La. App. 2d Cir. 2006). Petitioner unsuccessfully pursued a post-conviction application in state court, followed by this petition for federal writ of habeas corpus. Petitioner asks that his conviction be vacated because (1) his counsel was ineffective when she admitted Petitioner's guilt to the judge (outside the presence of the jury), (2) his counsel was ineffective for not moving to recuse the judge after that admission, and (3) jurors were biased because they saw him in restraints during a lunch recess. For the reasons that follow, it is recommended that the petition be denied.

**Relevant Facts**

Petitioner was charged in Bossier Parish with unauthorized use of a movable and felon in possession of a firearm. He had 11 prior felony convictions, so he also faced the prospect

of being billed as a fourth felony offender and receiving a natural life sentence. On the day the matter was set for jury trial, there was some confusion about a possible plea bargain. It was during an on-the-record discussion of this matter that counsel made her challenged statement to the judge. It does not appear a transcript of this matter was included within the transcript filed by the district attorney, despite the court's instructions that the district attorney file a copy of the entire state court record. It also appears that the district attorney did not file a copy of any of the post-conviction application proceedings, in which the claims at issue here were litigated. Fortunately, petitioner attached all of the relevant documents to his petition.

Judge Dewey E. Burchett, Jr., the prosecutor, and defense attorney Angela Waltman met outside the presence of prospective jurors to discuss the docket. When Petitioner's case came up, the prosecutor said he intended to go to trial on the unauthorized use of a movable count. He told the judge he would forego trial on the firearm charge because the unauthorized use count was enough to garner a life sentence.

Petitioner was brought into the room. When told trial was about to commence on the unauthorized use charge, Petitioner claimed that his counsel had told him that he would be pleading guilty to the firearms charge. Counsel denied this. There was then a lengthy discussion among all concerned about the terms of a prior plea offer. The prosecutor stated that the final offer was that Petitioner could plead guilty "straight up" and look forward to a multi-bill for a natural life sentence. The prosecutor noted that a more lenient offer had

been made the day before, but Petitioner had refused to plead and became belligerent in the courtroom. The judge told Petitioner he had no reason to do anything but go to trial under the current offer.

Defense counsel complained that Petitioner had said several things about her during the hearing that were not true. She then recounted to the court her discussions with Petitioner about the charges. Counsel said she had asked Petitioner if he wished to subpoena witnesses regarding the firearm charge, but Petitioner said no. He reasoned that his witnesses would not come if subpoenaed, but he could have them come on their own accord. Counsel then turned to the unauthorized use of a moveable charge:

> Regarding the movable, because no jurors are here, Mr. Banks stated to me that he wasn't worried about that case because he is in fact guilty of that offense and there -- and he doesn't remember a lot about what happened that day but he did take the car and he didn't bring it back, and there weren't any really any witnesses that I could call to prepare for that case.

See Transcript of May 13, 2004 hearing, Doc. 1-2, page 47 of 52. Counsel then discussed some communications she had with Petitioner regarding a plea bargain, after which she announced that she was prepared to go to trial. Upon the completion of counsel's remarks, the judge directed the bailiff to draw names for the six-person jury, and the selection process began immediately.

After a lunch break, apparently taken between jury selection and calling the first witness, Petitioner was escorted from the courtroom to the jail on the fifth floor of the building. Defense counsel moved for a mistrial on the grounds that jurors had seen Petitioner

in handcuffs in the custody of the sheriff's office while waiting for an elevator. The judge immediately began a hearing. Petitioner testified that he saw all six jurors and the alternate while he waited on an elevator for approximately one minute. He said that two of the jurors looked at him "with disdain" and, "I don't know if they were looking at the cuffs or me, but, you know, and then they got to whispering to one of the other ones." Deputy Beard, who was escorting Petitioner, testified that he did not notice the jurors looking at Petitioner. He believed a bailiff had been talking with the jurors, giving them instructions or directions, at that time.

Deputy Newton testified that he was with the jury and pulled them to the side while waiting for an elevator so that they did not mingle with other members of the public waiting for an elevator. He said he did not even notice Petitioner and did not know whether any jurors saw him.

There was discussion about the wisdom of questioning the jurors about the matter, with the downside being that it would emphasize the issue or bring it to the attention of persons who had not noticed. Petitioner himself decided, "I would like them questioned." The jurors were brought in one at a time. Each was asked if he or she had seen Petitioner during the lunch break. If the juror answered no, the questions ended. If the juror said he did see Petitioner, he was asked if he noticed anything unusual about him. Jurors Stephanie Grumble and Theresa Chewning were the only jurors who said they noticed Petitioner had handcuffs. The other jurors and the alternate said they did not see Petitioner or saw only his

back. Grumble and Chewning denied that seeing the handcuffs would affect their ability to be fair and impartial during trial. The judge asked them not to discuss the matter with other jurors.

Judge Burchett made a finding that two of the jurors did see the handcuffs but would not be influenced by what they saw. He denied the motion for a mistrial, citing several Louisiana decisions where a mistrial had been denied when jurors briefly saw a defendant in handcuffs. Tr. 51-83.

The first trial witness was Randall Solice, the owner of a used car business in Haughton, Louisiana. Solice testified that Petitioner was dropped off at his car lot at about 12:30 p.m. on Christmas Eve 2002. Petitioner, who bought a truck from Solice about a year earlier, expressed interest in buying another truck. Petitioner settled on a GMC model and asked to test drive it. Mr. Solice gave him permission to do so and asked that he be back shortly because Solice wanted to close by about 1:00 p.m. for Christmas Eve. Petitioner said he would be back in a matter of minutes. Mr. Solice called the police after an hour or so. Tr. 95-103.

State Trooper Rodger Cason testified that he was working on New Year's Eve 2002 when he was involved in a car accident in Red River Parish. The accident involved Petitioner, who was driving the missing GMC truck. Trooper Cason, as well as Trooper Glen Edwards, identified Petitioner as the driver of the truck. Tr. 104-08.

The State rested its case. Petitioner chose to testify. He began by stating his name and his address, which was, "I guess it'd be Red River Parish jail." He also admitted that he was serving a sentence from Webster Parish. Petitioner said that he settled on the GMC truck, and he told Mr. Solice that there was something "screwed up on my insurance" so that it might require until after the holidays to complete the purchase. Petitioner said the men agreed on a $5,000 price, and he thought "we was going to do the deal after the holidays." He said he drove across the street, bought some case, and left with the intention of paying for the truck after the holidays.

Petitioner admitted on direct examination that he had been convicted of numerous felonies. He also said that Mr. Solice was "a good fellow, and if he says that I told him that I'd be back in five minutes, I'm almost inclined to agree with the man. Like I say, he's a good fellow." On cross-examination, Petitioner added that "if he says five minutes, I'm going to hand it to him that he said five minutes. I don't recall that." Petitioner said that at "the risk of hanging myself," he had to say that Mr. Solice "is an honest man, yes, for a used car salesman." The prosecutor asked Petitioner why he did not return to the business in the days between Christmas and New Year's, and Petitioner answered that the business was closed. Mr. Solice testified on rebuttal that he was closed only for Christmas Day and opened the day after through about noon on New Year's Eve. Tr. 95-121. The jury returned a unanimous verdict of guilty. Tr. 139-40.

At sentencing, the prosecutor said he would make the decision on a multiple offender bill at a later date, and there was a possibility something could be worked out. The court noted that Petitioner was 45 years old and was a multiple felony offender. His convictions include simple burglary, kidnapping, simple escape, domestic violence, and aggravated kidnapping. The judge found that Petitioner was a "career criminal" and had other pending felony charges in Bossier and Red River Parishes. The court imposed the maximum 10-year sentence, to run consecutive with any other sentence. Tr. 143-48.

**Ineffective Assistance of Counsel**

Petitioner bears the burden of proving two components, deficient performance and prejudice, to establish ineffective assistance of counsel. Counsel's performance was deficient only if he made errors so serious that, when reviewed under an objective standard of reasonable professional assistance and afforded a presumption of competency, he was not functioning as the "counsel" guaranteed by the Sixth Amendment. Strickland v. Washington, 104 S.Ct. 2052, 2064 (1984). Prejudice exists only if there is a reasonable probability that, but for the error, the result of the trial would have been different. A reasonable probability is one sufficient to undermine confidence in the outcome. Id. 104 S.Ct. at 2068. For habeas purposes, the test is whether the state court's decision – that the petitioner did not make the Strickland showing – was so incorrect as to be contrary to, or an objectively unreasonable application of, the standards provided by Strickland's clearly established federal law. Wiggins v. Smith, 123 S.Ct. 2527, 2535 (2003); Williams v. Taylor, 120 S.Ct. 1495 (2000).

Petitioner complains that his attorney admitted to the judge that Petitioner told her "he is in fact guilty of that offense." The statement was made in the course of a very frustrating exchange, during which Petitioner accused counsel of misinforming him about aspects of the case and a plea offer, but counsel likely should not have so freely informed others of the content of communications between counsel and client about the key issue of whether the client committed the charged crime. A concession of guilt before the factfinder, against the wishes of the client, can be deficient performance. Haynes v. Cain, 298 F.3d 375 (5th Cir.2002) (en banc).

In this case, however, the admission came before the judge only, and the case was tried to a jury. Even assuming the admission to the judge was deficient performance, Petitioner must also establish prejudice. Petitioner's only effort to do are contentions that (1) counsel's statement to the judge effectively prevented Petitioner from being able to waive trial by jury in favor of a bench trial, and (2) counsel's statement may have prejudiced the judge during sentencing.

Judge Burchett, in ruling on the post-conviction application, noted that La. C. Cr. P. art. 780 does not allow a defendant to waive trial by jury after his trial has commenced. He also found no basis for the suggestion that counsel's statement caused him to be prejudiced at sentencing. Doc. 1-2, p. 15. The appellate court agreed and described the claims as speculative, given the lack of indication Petitioner ever sought a judge trial or that the

maximum sentence was imposed for a reason other than Petitioner's extensive criminal history. Doc. 1-2, p. 23.

Article 780 actually requires a defendant to exercise his right to waive trial by jury within 15 days after arraignment. "However, with permission of the court, he may exercise his right to waive trial by jury at any time prior to the commencement of trial." Petitioner argues that the trial had not yet commenced when counsel's statement was made. That is correct, but jury selection began immediately afterward, and there is no hint anywhere in the record that Petitioner might have even considered waiving trial by jury. Also, there is no basis to find that, even if the statement had not been made and a bench trial been allowed, there is a reasonable probability that the result of the trial would have been different. Petitioner essentially admitted his guilt on the stand. Virtually any factfinder, judge or jury, would have reached the same verdict of guilty.

There is no basis in the record to find that the judge was prejudiced at sentencing by counsel's statement. Counsel may have admitted before trial that Petitioner said he was guilty, but Petitioner himself did essentially the same during his testimony. The evidence of guilt was overwhelming. There is no reasonable probability that, if the statement had not been made, the judge would not have imposed the same sentence given Petitioner's extraordinary criminal history. For the same reasons, there is no basis to vacate the conviction on the grounds that counsel did not file a motion to recuse the judge. The state

court's adjudication of these claims was not an objectively unreasonable application of Strickland, so habeas relief is not available.

**Handcuffs**

The presumption of innocence is a basic component of a fair trial under our system of criminal justice. Estelle v. Williams, 96 S.Ct. 1691 (1976). The physical appearance of a defendant while in the presence of the jury may adversely affect that presumption. Id. Courts do, however, have an obligation to maintain courtroom order and attend to the safety and security of those in the courtroom. Illinois v. Allen, 90 S.Ct. 1057 (1970).

Petitioner claims that the jurors saw him in "shackles and leg irons," but the only evidence is that two of the jurors saw Petitioner wearing handcuffs as he waited for an elevator. It was quite reasonable that Petitioner – who told the jury on direct examination that he had several felony convictions and was then housed at the Red River Parish jail serving a sentence out of Webster Parish – was handcuffed as he was escorted from the courtroom to the jail. Only two jurors saw the handcuffs, both denied that it would affect their ability to be fair, and the trial judge instructed them to not discuss the matter with the other jurors.

Judge Burchett denied the post-conviction application on this issue, citing Louisiana cases that had upheld convictions when jurors had seen a defendant in handcuffs during transport. The state appellate court found the ruling to be correct. The undersigned finds that the state court's adjudication was not contrary to, or an unreasonable application of, any

clearly established Supreme Court precedent. The brief observation did not so impair the presumption of innocence as to require the conviction to be vacated. See U.S. v. Pina, 844 F.2d 1, 8 (1st Cir. 1988) (finding jurors' exposure to defendant while in handcuffs was not prejudicial after judge questioned jurors and they insisted they could remain impartial), cited in Chavez v. Cockrell, 310 F.3d 805, 809 (5th Cir. 2002) (denying COA on similar issue; a stun belt was inadvertently activated; trial judge determined the cause of the activation and questioned each juror to see if he could remain fair and impartial).

Accordingly,

**IT IS RECOMMENDED** that the petition for writ of habeas corpus be **denied**.

### Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within seven (7) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to

proposed factual findings and legal conclusions accepted by the district court.  See <u>Douglass v. U.S.A.A.</u>, 79 F.3d 1415 (5th Cir. 1996) (en banc).

    THUS DONE AND SIGNED in Shreveport, Louisiana, this 23rd day of August, 2011.

_____<br>
MARK L. HORNSBY<br>
UNITED STATES MAGISTRATE JUDGE